UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

AARON MEDDAUGH,

        *Plaintiff,*

v.

GATEWAY FINANCIAL SERVICES,
SCOTT SHISLER

        *Defendants.*

                                                /

CASE NO. 1:22-cv-11312
DISTRICT JUDGE THOMAS L. LUDINGTON
MAGISTRATE JUDGE PATRICIA T. MORRIS

## REPORT AND RECOMMENDATION

### I.    RECOMMENDATION

For the following reasons, I **RECOMMEND** that the Court **DISMISS** Plaintiff's complaint *sua sponte*, pursuant to 28 U.S.C. § 1915(e)(2) (2018).

### II.    REPORT

#### A.    BACKGROUND

Aaron Meddaugh alleges that Gateway Financial Services, and its attorney, Scott Shisler, garnished his wages to collect an expired judgment. (ECF No. 1, PageID.1.) Meddaugh's complaint provides few details about the circumstances underlying his claim. He explains that Gateway obtained a default judgment against him in 2010 after alleging that Meddaugh had defaulted on a loan he took out to purchase a "2003 Grand Am." (*Id.*) Although Meddaugh alleges that Gateway sued him to recover this debt, he does not explain what Gateway's interest in the debt was—he does not specify whether Gateway is the original creditor, an assignee, or a debt collection agency. (*Id.*)

1

Although Gateway obtained the default judgment in 2010, it did not attempt to collect this judgment until 2021 when its attorney, Scott Shisler, moved for a writ of garnishment. (*Id.* at PageID.1–2). After a Michigan court issued this writ, Meddaugh learned of the underlying default judgment for the first time. (*Id.*)

Meddaugh later filed a *pro se* complaint in this Court, alleging that defendants violated the FDCPA and the Michigan Consumer Protection Act by moving for a writ of garnishment after the limitations period for collecting the judgment has expired. (*Id.*) *See generally* Mich. Comp. L. § 600.5809(3); *Fowler Farm-city Sales, Inc. v. Ramon*, No. 269224, 2007 WL 2457600, at *1–2 (Mich. Ct. App. Aug. 30, 2007). Meddaugh also brought a claim for intentional infliction of emotional distress, arguing that the garnishment "caused a financial hardship" and made him "very upset" and "depressed." (ECF No. 1, PageID.2).

### B. LEGAL STANDARD

Because Meddaugh proceeds *in forma pauperis*, he subjects his claim to the screening standards in 28 U.S.C. § 1915(e)(2)(B). Under § 1915, courts may *sua sponte* review the complaints of all plaintiffs proceeding IFP and dismiss any before service of process if it determines that the action is frivolous or malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief against a defendant who is immune from such relief. 28 U.S.C. § 1915(e)(2)(B).

When considering whether a complaint states a claim, "[t]he court must construe the complaint in the light most favorable to the plaintiff, accept all the factual allegations as true, and determine whether the plaintiff can prove a set of facts in support of its claims that would entitle it to relief." *Bovee v. Coopers & Lybrand C.P.A.*, 272 F.3d 356, 360 (6th Cir. 2001).

Still, the plaintiff must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007). The plausibility standard requires the plaintiff to "raise a right to relief above the speculative level on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *Id.* at 555. (citations omitted). The complaint must include more than "labels and conclusions" or "formulaic recitation[s] of the elements of a cause of action." *Id.*

When a plaintiff proceeds without counsel, the court must liberally construe the complaint and hold it to a less stringent standard than a similar pleading drafted by an attorney. *Haines v. Kerner*, 404 U.S. 519, 520 (1972). However, even *pro se* complaints must satisfy basic pleading requirements. *Wells v. Brown*, 891 F.2d 591, 594 (6th Cir. 1989).

    **C.**    **ANALYSIS**

        **1.**    **FDCPA**

Concerned with what it saw as a "recurring problem of debt collectors dunning the wrong person or attempting to collect debts which the consumer has already paid," Congress enacted the FDCPA protects consumers from "abusive" debt collection practices. *Federal Home Loan Mortg. Corp. v. Lamar*, 503 F.3d 504, 508 (6th Cir. 2007) (internal quotation marks omitted) (first quoting 15 U.S.C. § 1692(e) (2018); and then quoting *Swanson v. South Oregon Credit Serv., Inc.*, 869 F.2d 1222, 1225 (9th Cir. 1988)).

Given the FDCPA's goal of protecting vulnerable consumers from abusive debt collection practices, all FDCPA claims must establish two threshold elements. *See Estep v. Manley Deas Kochalski, LLC*, No. 13-3635, 2013 WL 185391, at *2 (6th Cir. Jan. 16, 2014). First, the FDCPA's protections apply only to debt collectors—not ordinary creditors. *Montgomery v.*

3

*Huntington Bank*, 346 F.3d 693, 698–99 (6th Cir. 2003).  And second, the consumer's alleged debt must arise from a transaction for a good or service intended "primarily for personal, family, or household purposes."  15 U.S.C. § 1692a(5) (2018); *Bauman v. Bank of America, N.A.*, 808 F.3d 1097, 1100 (6th Cir. 2015).

Here, Meddaugh certainly alleges that the debt, which he incurred after purchasing a car, arose from a transaction intended for personal or household purposes.  (ECF No. 1, PageID.1).  However, he does not plausibly allege that either defendant is a debt collector.

Meddaugh pleads no facts explaining Gateway's interest in the debt.  Unlike debt collectors, the FDCPA does not protect consumers against their creditors—the entities who extend credit or "to whom a debt is owed."[1]  *Id.*; *Thomas v. Daneshgari*, 997 F. Supp. 2d 754, 764 (E.D. Mich. 2014). Although Plaintiff does not allege that Gateway was the original creditor, I note that Gateway describes itself as a "sub-prime lender that has financed consumer auto loans since 1996" on its website. www.gatewayfinancial.org. Thus, it is likely that Gateway is the entity to whom the debt is owed and thus, by definition, not a debt collector. But even if the court looks only to the four corners of the Complaint, Plaintiff fails to even allege a critical element of his claim, i.e., that Gateway collected the debt on behalf of some other entity—all Meddaugh tells the Court is that Gateway attempted to collect a debt he incurred after purchasing a loan for a car.  (ECF No. 1, PageID.1–2).  Because Meddaugh raises nothing more than a "sheer possibility" that Gateway is a debt collector, the Court cannot determine whether, accepting Meddaugh's factual allegations as true, Gateway is a debt collector.  *See Ashcroft v. Iqbal*, 556

---

[1] Individuals who "receive[] an assignment or transfer of a debt in default solely for the purpose of facilitating collection of such debt for another" are not creditors under the FDCPA.  15 U.S.C. § 1692a(4).

U.S. 662, 678 (2009); *cf. Chavez v. Access Cap. Servs., Inc.*, No. 13-01037, 2014 WL 2716876, at *3 (E.D. Cal. June 16, 2014).

Nor does Meddaugh plausibly allege that Shisler is a debt collector. The FDCPA provides two alternative definitions of a "debt collector." A debt collector is either (1) a person who conducts a business with "the principal purpose of" collecting debts, or (2) a person "who regularly collects" debts on behalf of others. 15 U.S.C. § 1692a(6). An attorney may be considered a debt collector under either definition. *Stratton v. Portfolio Recovery Associates*, 770 F.3d 443, 449–50 (6th Cir. 2014) (citing *Heintz v. Jenkins*, 514 U.S. 291, 294, 297 (1995)).

These two definitions impose distinct requirements. *Schroyer v. Frankel*, 197 F.3d 1170, 1176 (6th Cir. 1999). Under the second definition, an attorney must collect debts for others, and he or she need only collect debts "regularly," meaning that the attorney must collect debts on more than an "occasional" basis. *Id.* at 1174. An attorney must either collect debts "as a matter of course" or as a "substantial, but not principal, part of his or its general law practice," such that the attorney could be "considered [a] competitor[] of traditional debt collection companies . . . ." *Id.* at 1176.

Unlike the second definition, the first definition requires that an attorney must do more than "regularly" collect debts—debt collection must be "*the* principal purpose" of the attorney's practice. 15 U.S.C. § 1692a(6). An attorney's practice cannot have more than one principal purpose; debt collection must be the attorney's sole principal focus. *Hunte v. Safeguard Props. Mgmt., LLC*, 255 F. Supp. 3d 722, 726 (N.D. Ill. June 6, 2017) ("Congress intended to cover only entities having one principal purpose, that of enforcing security interests."). But while this definition requires a greater focus on debt collection activities than the second definition, it also

5

drops the second definition's requirement that the collector must collect debts "on behalf of others." 15 U.S.C. § 1692a(6).  Thus, an entity whose debt collection activities constitute the "principal purpose" of its business can collect its own interests, rather than the interests of others, and still be a debt collector.  *Barbato v. Greystone All., LLC*, 916 FR.3d 260, 267–68 (3d Cir. 2019); *Guzman v. Mel S. Harris & Associates, LLC*, No. 16-3499, 2018 WL 1665252, at *4 & n.5 (S.D.N.Y. Mar. 22, 2018); *see Henson v. Santander Consumer USA, Inc.*, 137 S. Ct. 1718 (2017).

Here, Meddaugh provides no facts suggesting that Shisler "regularly collects debts," on behalf of others or runs a business with the principal purpose of collecting debts.  Indeed, Meddaugh's complaint mentions just one debt collection activity—Shisler's collection efforts to recover Meddaugh's debt. (ECF No. 1, PageID.1–2).  He does not allege that Schisler has ever attempted to collect any other debts, and the Court cannot infer that Schisler regularly collects debts from mere fact that Shisler represented Gateway in one debt collection action.  (*Id.*) Although it is possible that Shisler often represents creditors in debt collection actions, it is equally possible that Shisler litigates debt collection actions on no more than an occasional basis. Without any information regarding the nature of Shisler's practice, the Court can do no more than speculate as to whether Shisler's debt collection activities constitute a substantial, or principal, part of his practice. *Cf. Rutty v. Krimko*, 789 F. App'x 916, 917–18 (2d Cir. 2020); *MTGLQ Investors, LP v. Wellington*, No. 17-00487, 2018 WL 1997294, at *5 (D.N.M. Apr. 27, 2018); *Gillard v. Michalakos*, No. 08-6193, 2009 WL 2143743, at *2 (N.D. Ill. July 15, 2009) ("Her allegations instead pertain only to his involvement in one collection matter, which is

6

insufficient to permit a reasonable inference that [the defendant] qualifies as a debt collector under the FDCPA.").

### 2. State Law Claims

The rest of Meddaugh's claims arise under Michigan law, and if the Court dismisses Meddaugh's FDCPA claim, then I suggest that the Court should also decline to exercise supplemental jurisdiction over these claims. Federal courts have jurisdiction over any state-law claim that forms "part of the same case or controversy" as the claims within the court's original jurisdiction. 28 U.S.C. § 1367(a) (2018). However, where "the district court has dismissed all claims over which it has original jurisdiction," the court "may" decline to exercise supplemental jurisdiction. *Id.* § 1367(c).

Generally, where a plaintiff's "federal claims are dismissed before trial, . . . the state claims should be dismissed as well." *Taylor v. First America Bank-Wayne*, 973 F.2d 1284, 1287 (6th Cir. 1992) (internal quotation marks omitted) (quoting *United Mine Workers v. Gibbs*, 383 U.S. 715, 726 (1966)). While a court has discretion to retain jurisdiction over a state law claim after all federal claims have been dismissed, it must balance its interest in avoiding "[n]eedless decisions of state law," against its interest in preserving judicial economy. 5 Charles Alan Wright et al., *Federal Practice and Procedure* § 3567.3 (3d ed. 2022); *Landfield v. Marion v. Gen. Hosp., Inc.*, 994 F.2d 1178, 1182 (6th Cir. 1993). In other words, while federal courts should allow state courts to decide state law issues, they must also take into consideration the time and resources parties have spent litigating a matter in federal court. *Aschinger v. Columbus Showcase Co.*, 934 F.2d 1402, 1412 (6th Cir. 1991). Where a Court dismisses all of a plaintiff's federal claims under Rule 12(b)(6), these interests weigh in favor of dismissal, absent "unusual

7

circumstances." *Musson Theatrical, Inc. v. Federal Exp. Corp.*, 89 F.3d 1244, 1255 (6th Cir. 1996). Indeed, not only have the parties typically invested little time or resources into their litigation at the pleading stage, but a "12(b)(6) dismissal implies that the substance of the federal claims was somehow lacking . . . ." *Id.*

Here, the Court's interest in avoiding state issues outweighs its interest in judicial economy. This litigation is in its early stages and the parties have not yet "expended significant time and resources litigating their dispute in federal court." *Taylor*, 973 F.3d at 1289. Indeed, the Defendants have yet to be served, and no party could have spent significant time or resources on discovery. Accordingly, I suggest that if the Court dismisses Plaintiff's FDCPA claim, then it should dismiss his state law claims as well.

### III. CONCLUSION

For these reasons, I recommend that the Court **DISMISS** Plaintiff's complaint.

### IV. REVIEW

Rule 72(b)(2) of the Federal Rules of Civil Procedure states that "[w]ithin 14 days after being served with a copy of the recommended disposition, a party may serve and file specific written objections to the proposed findings and recommendations. A party may respond to another party's objections within 14 days after being served with a copy." Fed. R. Civ. P. 72(b)(2); *see also* 28 U.S.C. § 636(b)(1). Failure to file specific objections constitutes a waiver of any further right of appeal. *Thomas v. Arn*, 474 U.S. 140, 155; *Howard v. Sec'y of Health & Human Servs.*, 932 F.2d 505, 508 (6th Cir. 1991); *United States v. Walters*, 638 F.2d 947, 950 (6th Cir. 1981). The parties are advised that making some objections, but failing to raise others, will not preserve all the objections a party may have to this Report and Recommendation. *Willis*

8

*v. Sec'y of Health & Human Servs.*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987). According to E.D. Mich. LR 72.1(d)(2), a copy of any objections is to be served upon this magistrate judge.

Any objections must be labeled as "Objection No. 1," "Objection No. 2," etc. Any objection must recite precisely the provision of this Report and Recommendation to which it pertains. Not later than 14 days after service of an objection, the opposing party may file a concise response proportionate to the objections in length and complexity. Fed. R. Civ. P. 72(b)(2); E.D. Mich. LR 72.1(d). The response must specifically address each issue raised in the objections, in the same order, and labeled as "Response to Objection No. 1," "Response to Objection No. 2," etc. If the Court determines that any objections are without merit, it may rule without awaiting the response.

Date: July 5, 2022                                  S/ PATRICIA T. MORRIS
                                                    Patricia T. Morris
                                                    United States Magistrate Judge